208 So.2d 224

**Cleveland BANKS**

v.

**STATE.**

**6 Div. 297.**

Court of Appeals of Alabama.

March 5, 1968.

Morel Montgomery and Fred Blanton, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Defendant appeals from a judgment of conviction for murder in the second degree with a sentence of twenty years.

The evidence for the state tends to show that on the night of July 23, 1965, Diane Sanders gave a party at her home in Pratt City. Several invited guests were present and some "Sandy Bottom" boys came without being invited. There were arguments among the persons who were invited about getting rid of the Sandy Bottom boys. A fight started in the yard and moved to the alley. Alfred Youngblood came back from the alley and said somebody had cut him and someone had to pay for it. At this time Eddie Sanders, Diane's Uncle, Sam Banks, the deceased, and defendant, Cleveland Banks, were in the back yard. Deceased and defendant were not related to each other. Youngblood became angry with deceased and Eddie Sanders suggested that deceased go into the house. When deceased started to go into the house Youngblood grabbed him in the collar. Sanders told Youngblood to let Sam alone but he wouldn't turn him loose. Robert Dubose came up and a scuffle ensued between Youngblood and deceased with Sanders and Dubose trying to separate them. At this time,

according to Sanders, Cleveland Banks "came charging in * * Cleveland said Alfred was his cousin, 'Leave him alone.'" Then Cleveland reached across Sanders' shoulder and struck deceased. Sanders' back was to defendant and he couldn't see whether he had anything in his hand, and couldn't see exactly what part of deceased's body was hit. Deceased leaned back, got loose and ran to the back of the alley. Everybody ran in different directions. Twenty minutes later somebody reported seeing a dead body and Sanders went to the alley at 9th street and saw deceased's body. There was blood on the front part of his body. He did not see defendant or Youngblood in the vicinity of the body.

Mary Banks, sister of deceased, testified she saw defendant strike her brother. "He hit him like the palm of his fist * * * * *. He had his fist wrapped up in his handkerchief, and when he hit my brother grabbed himself." Thereupon the following occurred:

"THE COURT: Let me find out something. The fist that you saw Cleveland hit Sam with was wrapped up in a handkerchief?

"A. Yes, sir.

"THE COURT: Was it on the fist that hit him, or on the other fist?

"A. He hit him with something in his fist. I don't know if it was his fist or not.

"THE COURT: All you saw was a fist wrapped up in a handkerchief?

"A. No, sir. Something was wrapped in the handkerchief, and his fist was on the handkerchief.

"THE COURT: He had a handkerchief in his fist?

"A. Yes, sir.

"THE COURT: And that was in the fist Sam was hit with, is that correct?

"A. Yes, sir."

This witness further stated defendant hit her brother one time; that her brother broke loose and started running up the front way and several of the "kids" were running with him. She never saw her brother alive after that. On cross examination she stated when her brother was hit he leaned backward and grabbed himself. She saw defendant when he came and told Diane Sanders his finger was cut; that she didn't know whether he had the handkerchief in the same hand; that she knew he had his finger cut and that he had a handkerchief in his hand and that he struck her brother.

J. O. Butler, the Coroner of Jefferson County for six years and deputy coroner for ten years before that testified deceased had a bruise on his right cheek and chin, and a stab wound on the left side of the chest three inches deep. He stated, without objection as to his qualification not having been shown, that the stab wound in the chest caused death.

Anthony O'Neal Jones testified when Alfred Youngblood came from the alley and said somebody had cut him and somebody would have to pay, he was holding a knife in his hand. "No one said anything then. They just looked up, and Alfred grabbed at Sam, and everybody started screaming and hollering there. Eddie Sanders grabbed Youngblood and told him there was no use for any of that, "* * * that is when Cleveland made a break for Sam Banks. Witness and Robert Dubose "started to stop them." Dubose was stabbed in the arm with a knife and witness was pushed down. "When Cleveland made a grab at Banks, Robert Dubose throwed his arm up and hollored out, and then he fell down, holding his arm, and I wasn't pushed down then, but when he pushed me I was falling back, and I saw him hit Banks in the chest." Cleveland Banks hit Sam Banks. On re-direct examination this witness stated he didn't see a knife in defendant's hand "when he started plunging," but he did see him with a knife seconds before he

made a lunge at deceased. The defendant did not threaten deceased, he only said, "That is my cousin, turn him loose."

Jerry Mason testified he saw Cleveland Banks shove deceased. "He pushed on him. That is about all. He was up on him." He didn't see a knife in defendant's hand at that time. The witness ran around the house, Cleveland Banks ran behind him and stabbed witness twice in the back. Sam Banks had already run out the back way.

No evidence was presented in defendant's behalf.

Defense counsel insists the verdict of guilt was founded on surmise, conjecture or suspicion; that no witness testified as to any encounter between deceased and accused from the time of the melee in the back yard until deceased was discovered some ten to twenty minutes later, according to some of the witnesses; that the record is replete with testimony that deceased was followed by persons other than accused when running from the fracas; that there was testimony that Alfred Youngblood and some of the other boys had knives, and the state had not explained the peculiar fact that the stab in the chest was on the left side while the bruises were on the right side of his cheek and chin.

It is true no witness saw a knife in defendant's hand at the time he struck deceased, but there was testimony that he had a knife immediately before and immediately after the incident. We are of the opinion the evidence presented questions for the determination of the jury, and was sufficient to sustain the verdict. There was no error in denying the motion to exclude the state's evidence, in refusing the requested general charge without hypothesis, nor in denying the motion for a new trial.

The judgment is affirmed.

Affirmed.